IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTOINETTE COOPER    :     CIVIL ACTION
           :
  v.          :
           :
BROADSPIRE SERVICES, INC, et al.  :     NO. 04-5289

O'NEILL, J.                JULY 20, 2005

MEMORANDUM

Plaintiff, Antoinette Cooper, a former employee of Independence Blue Cross filed a complaint on November 15, 2004 alleging that defendants, Broadspire Services, Inc. (formally Kemper Insurance Co.), Independence Blue Cross ("IBC"), and Carol Koplowitz denied her claim for short term disability benefits on August 20, 2003 in breach of her contract of insurance under Pennsylvania law and in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. On November 16, 2004, I ordered plaintiff to file a RICO Case Statement[1] setting forth in detail the allegations underlying the RICO claims. Plaintiff complied with this order and filed a RICO Case Statement on December 16, 2004. Before me now is defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below I will grant defendants' motion.

---

[1] The RICO Case Statement is a pleading that may be considered part of the operative complaint for the purposes of a motion to dismiss. See Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993); Smith v. Berg, No. 99-2133, 1999 U.S. Dist. LEXIS 18298, at *5-6 (E.D. Pa. Dec. 1, 1999).

BACKGROUND

I.      The Short Term Disability Program

As an IBC employee, Cooper was provided with a short-term disability benefit through the Short Term Disability Program, a payroll practice maintained pursuant to 29 C.F.R. § 2510.3-1(b).  Under the program, the short term disability benefit is paid out of IBC's general assets; IBC's employees pay no premium for the benefit and no monies are deducted from their pay to cover the cost of the benefit.  The program defines the term "disability" for purposes of the program and sets forth the terms and conditions precedent for receipt of a benefit.

Employees who claim short-term disabilities are instructed to contact Broadspire, the third-party administrator of the program, in order to make an application.  A Broadspire representative then performs a summary intake and the employee-claimant is asked to provide support for his or her short-term disability claim.  Under the terms of the program, claimants have seven days to submit the requested information.  At the same time, Broadspire requests job information from IBC in order to determine the scope of the employee's activity and the effect of the claimed disability on the employee's job performance.  Once all of the required paperwork is received, a member of Broadspire's medical staff analyzes the employee's claim to make an initial determination.  If the claim is denied, the employee is informed of the denial by letter.

Where a claim is denied, the determination letter sets out an employee's rights to appeal and to submit further information in support of his or her claim.  Pursuant to the terms of the program, an employee whose claim has been denied has twenty one days within which to appeal the adverse determination and submit additional documentation in support of his or her claim.  If additional documentation is submitted by the claimant, Broadspire may require an independent

-2-

medical examiner to perform a further examination. Once all of the information supporting a claimant's appeal has been collected, members of Broadspire's medical staff reevaluate the claim and make a final determination based on the employee's job description. If a claimant fails to submit additional supporting medical documents, Broadspire has forty five days from the initial date of the application within which to make a final determination. Again, a claimant is informed of this final determination by letter.

## II.     Cooper's Claim of Disability

During her employment at IBC, Cooper suffered from diabetes, anxiety and depression. These conditions forced her to stop working on August 12, 2003. Later that month, she filed a claim for short-term disability benefits and submitted medical documentation regarding her conditions to Broadspire. Cooper's application for benefits was reviewed by Broadspire staff members and was denied on or about August 20, 2003 for allegedly failing to submit sufficient medical documentation. She was informed of this decision by letter dated August 29, 2003. Cooper appealed the initial decision to deny her benefits shortly after receipt of the denial letter. Upon further review, Broadspire decided to uphold its initial finding denying her short-term disability benefits and informed her of its final determination by letter dated December 23, 2003. Cooper has since left her position with IBC.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2004). In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine

whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief."

Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996) (citations omitted). Nevertheless, in evaluating

plaintiff's pleadings I will not credit any "bald assertions." In re Burlington Coat Factory Sec.

Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). Nor will I accept as true legal conclusions or

unwarranted factual inferences. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "The complaint

will be deemed to have alleged sufficient facts if it adequately put the defendant on notice of the

essential elements of the plaintiff's cause of action." Nami, 82 F.3d at 65. A Rule 12(b)(6)

motion is proper only if the plaintiff "can prove no set of facts in support of his claim which

would entitle him to relief." Conley, 355 U.S. at 45-46.

## DISCUSSION

I.      Breach of Contract of Insurance—Group Policy Claim

Plaintiff has failed to allege properly the existence of a contract which could be breached.

A successful breach of contract action requires "(1) the existence of a contract, including its

essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages."

CoreStates Bank N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. 1999) (internal citations

omitted). Plaintiff's complaint alleges that she "was insured and eligible for benefits under an

employee benefit plan issued by Defendant IBC and was a third-party beneficiary of the contract

between Defendant Broadspire and Defendant IBC." However, defendants argue that plaintiff's

breach of contract claim fails because plaintiff's employment relationship with IBC was at-will

and because the program is not a contract. Plaintiff counters that because defendant IBC offered

employment to plaintiff and she accepted the offer of employment, she had an employment

contract with IBC which included a short-term disability plan.

In Pennsylvania, "there is a strong presumption that employment is at-will and terminable by either party for any reason, or even no reason at all, unless there is a statutory or contractual provision to the contrary."  Buckwalter v. ICI Explosives USA, Inc., No. 96-4795, 1998 U.S. Dist. LEXIS 276, at *13 (E.D. Pa. Jan. 8, 1998) citing Geary v. U.S. Steel Corp., 319 A.2d 174, 176 (Pa. 1974); Scully v. US WATs, Inc., 238 F.3d 497, 505 (3d Cir. 2001) citing Geary, 319 A.2d at 176; Scullion v. Emeco Indus., Inc., 580 A.2d 1356, 1358 (Pa. Super. 1990).  See also Nix v. Temple Univ. of Com. Sys. of Higher Educ., 596 A.2d 1132, 1135 (Pa. Super. 1991); Mercante v. Preston Trucking Co., No. 96-5904, 1997 U.S. Dist. LEXIS 7453, at *1 (E.D. Pa. May 21, 1997).  Plaintiff must rebut the at-will presumption with clear evidence that the employment relationship was contractual.  See Buckwalter, 1998 U.S. Dist. LEXIS 276, at *16. Plaintiff's bare allegation that her employment relationship was contractual in her response to defendants' motion to dismiss is insufficient to rebut the presumption of at-will employment, particularly in light of the IBC employment at-will policy that clearly states:  "[e]mployment at-will is a term and condition of employment and continued employment for all associates employed by IBC."  IBC's employment at-will policy further clarifies that "[n]o commitment or other term of employment shall be inferred or otherwise assumed from any source whatsoever, written or oral, including but not limited to any policies or statements of IBC.  Policies and statements are not a contract, express or implied . . . ."  C.f. Hennesy v. Santiago, 708 A.2d 1269, 1278 (Pa. Super. 1998) (holding plaintiff failed to state a claim of intentional interference with a contract where she failed to allege that she was a contractual employee in her complaint). Because plaintiff has not adequately rebutted the assumption that she is an at-will employee, she has failed to allege sufficiently that she was a contractual employee of IBC.

In addition, plaintiff has failed to allege the necessary terms of a contract for short-term benefits. The short-term disability program is a payroll practice maintained pursuant to C.F.R. § 2510.3-1(b), and IBC's employees pay no premium for the benefit and no monies are deducted from their pay to cover the cost of the benefit. The program is thus an employee benefit that is not based on a contractual agreement between IBC and its employees.

Plaintiff's complaint fails to allege that she was a contractual employee of IBC and fails to allege the essential terms of a contract for short-term disability benefits. Absent these allegations in the complaint, plaintiff cannot prove any set of facts to support her claim that defendants breached a contract for short-term disability benefits. I will therefore dismiss plaintiff's breach of contract claim.

II.     RICO Claims

RICO provides a private civil action to recover treble damages for injuries resulting from a defendant's "racketeering activities" in violation of RICO's substantive provisions. 18 U.S.C. § 1964(c). Plaintiff alleges that defendants engaged in criminal racketeering activity by conspiring to deny her request for short-term disability benefits pursuant to the program. The Court of Appeals has explained the statutory framework for asserting civil RICO claims:

> The RICO statute authorizes civil suits by "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c) (1988). Section 1962 contains four separate subsections, each addressing a different problem. Section 1962(a) prohibits "any person who has received any income derived . . . from a pattern of racketeering activity" from using that money to acquire, establish or operate any enterprise that affects interstate commerce. Section 1962(b) prohibits any person from acquiring or maintaining an interest in, or controlling any such enterprise "through a pattern of racketeering activity." Section 1962(c) prohibits any person employed by or associated with an enterprise affecting interstate commerce from "conduct[ing] or participat[ing] . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity." Finally, section 1962(d) prohibits any person from "conspir[ing] to violate any of

the provisions of subsections (a), (b), or (c)."

Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1991). In the present case, plaintiff alleges violations of Sections 1962(a), (c), and (d).

A RICO violation requires the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002) quoting Sedima, S.P.R.L. v. Imrex Co., Inc., et al., 473 U.S. 479, 496 (1985). See also Salinas v. United States, 522 U.S. 52, 62 (1997); Annulli v. Panikar, 200 F.3d 189, 198 (3d Cir. 1999). Moreover, a plaintiff only has standing if she is injured in her business or property by the conduct constituting the violation. Rehkop v. Berwick Healthcare Corp., 95 F.3d 285, 288 (3d Cir. 1996); Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1164 (3d Cir. 1989).

Defendants contend that plaintiff's RICO claims are deficient and incapable of surviving the motion to dismiss because: (A) plaintiff failed to articulate any viable predicate acts of fraud, extortion, or bribery; (B) plaintiff has not adequately pled critical elements of the specific RICO claims; and (C) plaintiff lacks standing.

A. Predicate Acts

_____ To state a claim under the RICO statute, a plaintiff must first allege that defendants engaged in a "pattern of racketeering activity." See 18 U.S.C. § 1962(c).[2] For RICO purposes, racketeering activity is defined as any act which is "indictable" under the federal criminal statutes

_____

[2] Section 1962(c) states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

set forth in 18 U.S.C. § 1961(1).  Such activity includes mail fraud, 18 U.S.C. § 1341,[3] and wire

fraud, 18 U.S.C. § 1343.[4]  <u>See</u> 18 U.S.C. § 1961(1).  Plaintiff alleges that defendants engaged in

mail fraud and wire fraud by knowingly using the interstate mails and wires to further their

scheme to deny short-term disability benefits to beneficiaries in order to reduce expenses and

increase profits.[5]

Plaintiff alleges that two letters—one dated August 29, 2003 and the other dated

December 23, 2003—constitute the predicate acts of mail fraud because they were sent through

---

[3] The mail fraud statute, 18 U.S.C. § 1341, provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail . . . any such matter or thing . . . shall be fined under this title or imprisoned not more than 20 years, or both.

[4] The wire fraud statute, 18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than 20 years, or both.

[5] Courts apply the same analysis to determine whether a person has committed the predicate acts of mail fraud and wire fraud.  <u>Carpenter v. United States</u>, 484 U.S. 19, 25 n.6 (1987) ("The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses."); <u>United States v. Frey</u>, 42 F.3d 795, 797 n.2 (3d Cir. 1994) ("The cases construing the mail fraud statute are applicable to the wire fraud statute as well.") (citations and internal quotation marks omitted).

the United States mail system in order to continue defendants' fraudulent scheme. Plaintiff also alleges that "numerous telephone calls" from defendants to plaintiff between August 2003 and December of 2003 constitute the predicate acts of wire fraud.

A plaintiff raising a claim of mail or wire fraud must establish three essential elements: (1) a scheme to defraud, (2) the use of the mails or wires for the purpose of executing the scheme, and (3) fraudulent intent. United States v. Pharis, 298 F.3d 228, 234 (3d Cir. 2002). See also Pereira v. United States, 347 U.S. 1, 8 (1954); Schuylkill Skyport Inn, Inc. v. Rich, No. Civ. A. 95-3128, 1996 U.S. Dist. LEXIS 12655, at *47 (E.D. Pa. Aug. 20,1996).

The words "to defraud" in the mail statute have "the common understanding of wronging one in his property rights by dishonest methods or schemes, and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." Carpenter v. United States, 484 U.S. 19, 27 (1987) (citation and internal quotation marks omitted). In evaluating whether there is a "scheme" to defraud, the Court of Appeals has not required a scheme to be "fraudulent on its face"; rather, it "must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528 (3d Cir. 1998) quoting Kehr Packages, 926 F.2d at 1415.

As with any other allegation of fraud, plaintiff's allegations of mail and wire fraud must be pled with particularity under Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." See, e.g., Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d

786, 791 (3d Cir. 1984) (holding that 9(b) "requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."). See also Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (holding Rule 9(b) requires "plaintiffs plead with particularity the 'circumstances' of the alleged fraud").

The purpose of Rule 9(b) is to provide a defendant with notice of the precise misconduct with which he or she is charged and to prevent false or unsubstantiated charges. Rolo, 155 F.3d at 658. Generally, this requires a plaintiff to plead the "who, what, when, and where details of the alleged fraud." United States ex rel. Waris v. Staff Builders, Inc., No. 96-1969, 1999 U.S. Dist. LEXIS 2998, at *16 (E.D. Pa. Mar. 4, 1999). However, the pleadings need not contain such specifics, as long as they adequately describe the nature and subject of an alleged fraud. See Seville Indus. Mach. Corp., 742 F.2d at 791. Thus, while there is no formula for pleading fraud with particularity, fraudulent acts under RICO may be found to be insufficiently alleged where pleadings fail to inject "precision and some measure of substantiation into their allegations of fraud." Id.

Defendants contend that the predicate acts alleged in the plaintiff's complaint fail to satisfy the heightened pleading requirements of Rule 9(b) because they are plead too generally to give adequate notice of the precise misconduct of which they are accused. Specifically, defendants contend that plaintiff's averments fail to describe the nature and subject of the alleged misrepresentation. See Seville Indus. Mach. Corp., 742 F.2d at 791. Plaintiff contends that she has put defendants on adequate notice by alleging "numerous telephone calls" and two specific letters and the dates they were sent that were sent to plaintiff used in furtherance of defendants'

scheme to deny plaintiff short-term disability benefits.

The rule regarding the pleading of fraud does not require absolute particularity or a recital of the evidence, especially when some matters are beyond the knowledge of the pleader and can only be developed through discovery. See In re Craftmatic Secs. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) (cautioning against rigid enforcement of Rule 9(b) in circumstances where the factual information is peculiarly within the defendant's knowledge or control). However, a general assertion of "fraud" or some other bald assertion or legal conclusion provides no information of the precise misconduct alleged for either the Court or the defendant and therefore is insufficient under Rule 9(b). See In re Rockerfeller Ctr. Properties, Inc. Secs. Litig., 311 F.3d 198, 216 (2002) ("Where it can be shown that the requisite factual information is peculiarly within a defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed. Nevertheless, even when the defendant retains control over the flow of information, boilerplate and conclusory allegations will not suffice, and plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible.") (internal citations omitted); Shapiro v. UJB Fin. Corp., 964 F.2d 272, 285 (3d Cir. 1992) (holding "had the complaint contained a boilerplate allegation that plaintiffs believe the necessary information 'lies in defendants' exclusive control,' it still would not have satisfied Rule 9(b)").

In the instant case, plaintiff alleges "an understanding between Defendants Independence Blue Cross Blue Shield and Broadspire Services, Inc. to summarily deny short term disability claims for profit." Plaintiff contends that "defendant[s] pursued their scheme through material misrepresentations or material omissions and nondisclosures relating to their decision not to honor the terms and conditions of short-term disability plan that they issued and continue to issue to plaintiff and insureds similarly situated." Plaintiff contends that these

omissions include a failure to disclose: (1) that non-medical employees would make and/or supervise the making of disability determinations; (2) that defendants would convene meetings at which certain claims for disability would be targeted in order to meet the goals of reducing insurance reserves; and (3) that defendants failed to disclose or misrepresented their role as administrators of the disability plan and that they would not be acting principally as fiduciaries of the insured.   In addition, plaintiff alleges that defendants ignored medical records from plaintiff's treating physicians and "acted out of an extreme self-interest in reviewing claims". Plaintiff "requests discovery in order to substantiate" her RICO claims.

Initially, I note that plaintiff has failed to provide any information regarding "who, what, when, and where details of the alleged fraud" with the exception of the dates of the two letters denying plaintiff's disability claim.  United States ex rel. Waris v. Staff Builders, Inc., 1999 U.S. Dist. LEXIS 2998 at *16.  With regard to the overall scheme, plaintiff's averments regarding omissions must fail because plaintiff fails to plead adequately either a duty to disclose or how these alleged omissions were "reasonably calculated to deceive" in order to constitute a "scheme to defraud".[6]   Furthermore, plaintiff's averment that defendants conducted an alleged "meeting" where certain short-term disability claims were "targeted " fails to detail this "targeting," and relies only on bald assertions of a larger scheme to defraud IBC employees of their short-term

---

[6] The Court of Appeals has recognized that an omission must be deceptive in nature absent a special relationship.  See Kehr Packages, 926 F.2d at 1416.  See also Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528 (3d Cir. 1998) (holding that an omission need only be "reasonably calculated to deceive" to constitute a "scheme to defraud").  Thus, a duty to disclose is not always a required element of fraud when there has been a material non-disclosure.  See Sonnenberg v. United States, No. 01-2067, 2003 U.S. App. LEXIS 6503, at * 11 (3d Cir. Jan. 14, 2003); United States v. Colton, 231 F.3d 890, 898-900 (4th Cir. 2000); United States v. Autuori, 212 F.3d 105, 119 (2d Cir. 2000).  However, the non-disclosure must involve purposeful concealment of material facts with intent to deceive.  Colton, 231 F.3d 898-900 citing Neder v. United States, 527 U.S. 1,1 (1999).

disability benefits.  Plaintiff fails to plead with the requisite factual specificity to avoid a motion to dismiss.  Therefore, plaintiff's RICO claims must fail as she has failed to plead fraud with the particularity required by Rule 9(b).

In addition, plaintiff's claims will not survive a motion to dismiss because she fails to adequately allege the second requirement for mail or wire fraud, the "use of mails or wires to execute the scheme."  This requires that the mailings or wire communications be "incident to an essential part of the scheme," or a "step in [the] plot."  Schmuck v. United States, 489 U.S. 705, 710-711 (1989).  See also United States v. Otto, 742 F.2d 104, 108 (3d Cir. 1984).  Mailings or wire communications made after the perpetrators accomplish the scheme's goal are not "for the purpose of executing" a scheme, with the exception of subsequent mailings designed to "lull victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place."  United States v. Maze, 414 U.S. 395, 403 (1974); United States v. Lebovitz, 669 F.2d 894, 896 (3d Cir. 1982).  See, e.g., United States v. Sampson, 371 U.S. 75, at 80-81 (1962); United States v. Otto, 742 F.2d 104, 108 (3d Cir. 1984).

Plaintiff contends that routine business mailings closely bound with the fraudulent scheme may serve as a the basis for a charge of mail fraud.  United States v. Brown, 583 F.2d 659, 668 (3d Cir. 1978).  Defendants counter that although a particular mailing or wire transmission need not be fraudulent to sustain a claim of mail or wire fraud plaintiff fails to identify any specific misstatements, omissions, or other specific conduct that constitutes part of the alleged "scheme" and that plaintiff has not alleged that she reasonably relied on any particular misrepresentation or omission to her detriment.  See Agathos v. Starlite Motel, 60 F.3d 143, 147 (3d Cir. 1995) (explaining that the elements of fraud are knowing misrepresentation, intent to

induce reliance and reliance).  See also Steamfitters Local Union No. 420 v. Phillip Morris, Inc.,

171 F.3d 912, 920 (3d Cir. 1999) (identifying "whether [plaintiffs] reasonably relied on the

fraud" as a "necessary element[]" of a fraud claim).

I agree that while routine business mailings, such as the mailings in question denying the

plaintiff short-term disability benefits, may support a charge of mail fraud, the mailings must be

sufficiently closely related to the alleged scheme.  See Brown, 583 F.2d at 668 ("[I]f the mailing

is a part of executing the fraud, or is closely related to the scheme, a mail fraud charge will lie

even though the mailing was also related to a business purpose.")  Plaintiff avers that two letters

and numerous phone calls were used to further defendants' alleged scheme to defraud her of

short-term disability benefits.  However, plaintiff has not adequately plead the purpose of the

mailings within the defendants' alleged fraudulent scheme.  See Annulli v. Panikkar, 200 F.3d

189, 201 n.10 (3d Cir. 1999).  In addition, plaintiff has not alleged that the mailings were aimed

at lulling the plaintiff into a false sense of security or deterring plaintiff from taking action to

protect her interests.  See United States v. Otto, 742 F.2d 104, 108 (3d Cir. 1984).

The pleadings do not evince that the mailings were used in furtherance of a scheme or

artifice to defraud within the meaning of the mail fraud statute and/or did not induce reliance,

which is required when mail fraud serves as a predicate act under the RICO statute.[7]  While the

mails are alleged to have been used by defendants to maintain and operate their business in

violation of an alleged contractual duty, plaintiff's assertions fall short of establishing a RICO

---

[7] Unlike common law fraud, reliance is not an element of mail fraud.  See United States v. Sanders, 893 F.2d 133, 138 (7th 1990).  However, most courts now agree that reliance must be shown when mail fraud is a predicate act in a civil RICO case.  See Allen Neurosurgical Associates, Inc. v. Lehigh Valley Health Network, et al., No. 99-4653, 2001 U.S. Dist. LEXIS 284, at *14 (E.D. Pa. Jan. 18, 2001).

action.  See Werther v. Rosen, et al., No. 02-CV-3589, 2002 U.S. Dist. LEXIS 22262, at *9 (E.D. Pa. Oct. 30, 2002).  Plaintiff has failed to explain "how these or any other communications were false or misleading, or how they contributed to the alleged fraudulent scheme."  Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002).  The facts alleged in the pleadings are insufficient to find that the predicate offenses of mail or wire fraud have been committed.

Plaintiff avers that defendants have engaged in mail fraud and wire fraud by knowingly using the interstate mails and wires to further their scheme to deny short-term disability benefits to beneficiaries in order to reduce expenses and increase profits.  While plaintiff does provide specific letters that were sent to her denying her benefits and the dates they were sent, she fails to explain how these letters perpetuate the alleged fraudulent scheme.  In the words of Judge Pollack:  "The problem . . .  is not that the pleading fails for lack of specificity with respect to the particular documents," but that the "pleading fails for lack of an allegation of the nature of the fraud alleged."  IBJ Whitehall Bank & Trust Co. v. Korman, et al., No. 99-1347, 2000 U.S. Dist. LEXIS 4775, at *16-17 (E.D. Pa. Mar. 31, 2000).

B.  Pattern of Racketeering Activity

In addition, defendants contend that the RICO claims must be dismissed because they fail to allege adequately a pattern of racketeering activity.  Even if plaintiff properly alleged the predicate acts of mail and wire fraud (§ 1341 and § 1343), those predicate acts, if proven, must constitute a "pattern of racketeering activity" in order to state a RICO claim.

The Court of Appeals has noted that "in many [RICO] cases plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations threshed out in discovery."  Banks v. Wolk, 918 F.2d 418, 419-420 (3d Cir. 1990) quoting  Swistock v. Jones, 884 F.2d 755, 758 (3d Cir. 1989).  In many circumstances a dispute

over the existence of a pattern of racketeering activity is better addressed in a motion for summary judgment than in a motion to dismiss. See Swistock, 884 F.2d at 758. Where, however, the "allegations of the complaint, taken as true, do not support the existence of either long-term criminal conduct or the threat thereof, dismissal is appropriate." Advanced Power Sys. v. Hi-Tech Sys., Inc., No. 90-7952, 1992 U.S. Dist. LEXIS 6479, at *21 (E.D. Pa. April 28, 1992). See also Marshall-Silver Constr. Co. v. Mendel, 894 F.2d 597, 598 (3d Cir. 1990).

While a pattern of racketeering activity requires at least two acts of racketeering activity, two such acts "may not be sufficient." H.J., Inc. v. Northwestern Bell Telephone Co., et al., 492 U.S. 229, 237-38 (1989) quoting Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. at 496 n. 14 (1985). In other words, Section 1961's two act requirement does not define a pattern of racketeering activity so much as it sets a minimum condition for such patterns to exist. H.J., Inc., 492 U.S. at 237-38. In addition, the Supreme Court has written that a pattern contains two defining characteristics: relatedness and continuity. See H.J., Inc., 492 U.S. at 239 (holding a pattern of racketeering activity requires the predicate acts be "related, and that they pose a threat of continued criminal activity"). Predicate acts are related when they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id., 492 U.S. at 240. The parties do not appear to dispute the relatedness of the alleged predicate acts of mail fraud and wire fraud.[8] However, defendants contest the continuity of those acts.

 "[C]ontinuity is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of

---

[8] Relatedness "will nearly always be satisfied in cases alleging at least two acts of mail fraud stemming from the same fraudulent transaction." Kehr Packages, 926 F.2d at 1414.

repetition." Id., 492 U.S. at 241.  If a plaintiff alleges a RICO violation over a closed period ("closed-ended" scheme), she must prove a series of related predicates lasting a "substantial period of time."  Id., at 242.  If, however, she "alleges a RICO violation before continuity is established ('open-ended' scheme), she must prove a 'threat of continuity.'"  Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 609-610 (3d Cir. 1991) citing H.J., Inc., 492 U.S. at 242. A threat of continuity exists when the predicate acts are a part of defendant's "regular way of doing business," or there is evidence that the predicate acts themselves involve a distinct threat of long-term racketeering activity either implicitly or explicitly.  H.J., Inc., 492 U.S. at 242.

Defendants contend that plaintiff has at best alleged a "closed-ended" scheme that lasted but four months, and is therefore insufficient to allege a "pattern of racketeering activity" for purposes of Section 1962(c).  Plaintiff contends that a single scheme could support a pattern of racketeering activity, and that whether the predicate acts proved establish a threat of continued racketeering activity depends on the specific facts of each case.  See Swistock, 884 F.2d at 758 (explaining that although the Supreme Court has not explicitly held that the existence of a RICO pattern as a jury question, the Supreme Court has held that a district court improperly dismissed a plaintiff's RICO claim because the threat of continuity may be established at trial).

"Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the 'substantial period of time'] requirement: Congress was concerned in RICO with long-term criminal conduct." H.J., Inc., 492 U.S. at 242.  The Court of Appeals has considered what constitutes a "substantial period of time" for the "closed-ended" continuity prong of RICO's "pattern" requirement, and has concluded that conduct lasting less than twelve months is insufficient to meet the standard.  Plater-Zybrek v. Abraham, No. 97-3322, 1998 U.S. Dist. LEXIS 1736, at *23-24 (E.D. Pa. Feb. 17, 1998) citing Tabas v. Tabas, 47 F.3d 1280, 1293

(3d Cir. 1995). See also Marshall-Silver Constr. Co. v. Mendel, 894 F.2d 593, 598 (3d Cir. 1990) (holding that plaintiff's alleged acts of mail fraud and extortion lasting seven months showed "neither 'long-term' criminal conduct nor the threat thereof."); Hughes, 945 F.2d at 610-611 (holding that 10 months is not a substantial period of time and therefore there was no continuity under a closed-ended scheme); Hindes v. Castle, 937 F.2d 868, 875 (3d Cir. 1991) (holding eight months of a closed-ended scheme did not establish continuity); Kehr Packages, 926 F.2d at 1413 (holding predicate acts that lasted less than seven months did not satisfy the continuity requirement); Banks v. Wolk, 918 F.2d 418, 422-423 (3d Cir. 1990) (holding an eight month period of predicate acts as insufficient). Plaintiff alleges a series of events over a four month period; this is insufficient to support a closed-ended scheme.

Plaintiff does allege indirectly that there is the threat of related future behavior on the part of the defendants. Although plaintiff alleges that defendants engaged in similar misconduct with respect to other "policyholders and insureds," plaintiff does not allege any specific facts beyond these bald accusations. If I were to accept plaintiff's bald accusations, then virtually any single incident involving alleged fraud could "be converted into a pattern of racketeering activity through the use of baseless stock phrases in a pleading." Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc., No. 90-7952, 1992 U.S. Dist. LEXIS 6479, at *23 (E.D. Pa. April 28, 1992). Plaintiff may not "compensate for the inadequacy of [her] pleading through the use in [her] brief of bald statements that track the language of previous court decisions." Id., at *23-24. There is no basis in plaintiff's pleadings to support a claim that defendants' alleged conduct would continue in the future.

In cases where the alleged conduct did not extend over such a substantial period of time, or did not otherwise suggest a threat of continuation, the Court of Appeals has warned against

-18-

attempts to convert alleged "garden variety" fraud into RICO claims. Advanced Power Sys., 1992 U.S. Dist. LEXIS 6479 at *25 citing Banks v. Wolk, 918 F.2d at 423 (dismissal appropriate where complaint alleges participation in one act of real estate fraud, with no indication from the facts alleged that such fraud would have continued or represented a regular way of doing business). I am mindful that the continuity analysis is flexible. See H.J., Inc., 492 U.S. at 243. See also Envtl. Tectonics v. W.S. Kirkpatrick, Inc., 847 F.2d 1052, 1063 (3d Cir. 1988) (following a "flexible interpretation of RICO's pattern requirement"). However, the pleadings do not provide a basis from which it reasonably could be inferred that defendants' alleged misconduct poses a threat to future criminal activity. Therefore, plaintiff's Section 1962(c) will be dismissed for a failure to allege a pattern of racketeering activity.

## C.  Standing

Defendants argue that even if plaintiff has sufficiently pled the predicate acts of mail and wire fraud and a pattern of racketeering activity plaintiff's claims will not survive a motion to dismiss: they assert that she lacks standing to pursue her RICO claims because she did not plead adequately that she suffered a compensable injury to her business or property. Defendants also contend that plaintiff has not alleged that the injury suffered was proximately caused by defendant's purported acts of racketeering. I agree. In her pleadings, plaintiff alleges that defendants were engaged in racketeering activity by denying plaintiff's disability benefits through mail and wire fraud, and because of this denial, plaintiff: (1) did not receive her disability benefits; (2) was terminated from her employment; (3) lost her health benefits; (4) could not receive necessary medical treatment; and (4) consequently fell behind in her bills and ruined her credit.

To have standing, a RICO plaintiff must show that the alleged violations proximately

caused injury to her business or property. See 18 U.S.C. § 1964(c); Holmes v. Security Investor

Protection Corp., 503 U.S. 258, 267-68 (1992); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479,

496 (1985) ("[T]he plaintiff only has standing if, and can only recover to the extent that, [she]

has been injured in [her] business or property by the conduct constituting the violation"). An

indirect injury remotely caused by a RICO violation will not satisfy the proximate cause

requirement. See Callahan v. A.E.V., Inc., 182 F.3d 237, 262-63 (3d Cir. 1999) (holding that the

ability to pursue RICO claims is limited to those feeling the "direct impact of the fraud").

Plaintiff has not alleged adequately how the purported RICO violations, the use of mail and wire

fraud to further an alleged scheme to deny IBC employees short-term disability benefits,

proximately caused her termination from employment, loss of health benefits, and ruined credit.

See Holmes, 503 U.S. at 268 (holding that recovery under RICO is available only to those who

can establish a "direct relation between the injury asserted and the injurious conduct alleged").

The injury to business or property element of section 1964(c) can be satisfied by allegations of

actual monetary loss, ie. out-of-pocket loss. Maio v. Aetna Inc., 221 F.3d 472, 483 (3d Cir.

2000). See also Steele v. Hosp. Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994) (stating that

plaintiffs have not suffered a financial loss under RICO if they have paid none of the allegedly

excessive charges out of their own pockets). While plaintiff alleges a tangible financial loss, she

fails to allege adequately how that financial loss is a direct result of the denial of short-term

benefits.

      Moreover, "[t]o have been injured in [her] business or property, a plaintiff must have a

property interest." Browne v. Abelhak, No. 98-6688, 2000 U.S. Dist. LEXIS 12064, at *8-9

(Aug. 23, 2000). "To have a property interest in a benefit, a person clearly must have more than

an abstract need or desire for it. He must have more than a unilateral expectation of it. He must,

instead, have a legitimate claim of entitlement to it."  Board of Regents v. Roth, 408 U.S. 564,

577 (1972).  As previously discussed, plaintiff has failed to allege properly the existence of either

an employment contract or a contract for short-term disability benefits.  Thus, plaintiff has

asserted no property interest in the benefit program.  Therefore, plaintiff does not allege

adequately any injury to her "business or property" proximately caused by the alleged RICO

violations which would confer RICO standing.

## D.  Investment of Racketeering Income—18 U.S.C. § 1962(a)

_____Defendants also argue that plaintiff's Section 1962(a)[9] claim should be dismissed because

plaintiff has failed to allege that she was injured by the investment of racketeering proceeds.

Initially, I note that plaintiff fails to allege an injury resulting from the investment of racketeering

income distinct from an injury caused by the defendants' alleged predicate acts.  Nonetheless,

plaintiff alleges that defendants engaged in mail and wire fraud by knowingly using interstate

mails and wires to further their scheme to deny short-term disability benefits in order to reduce

expenses and increase profits, and used income made from that scheme to invest in the stock

market, bonds, mutual funds, etc.

Section 1962(a) was enacted primarily to halt the investment of racketeering proceeds in

legitimate businesses.  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993).

---

[9] Section 1962(a) states in pertinent part:

> It shall be unlawful for any person who has received any income
> derived, directly or indirectly, from a pattern of racketeering
> activity. . .  to use or invest, directly or indirectly, any part of such
> income, or the proceeds of such income, in acquisition of any
> interest in, or the establishment or operation of, any enterprise
> which is engaged in, or the activities of which affect, interstate or
> foreign commerce.

The Court of Appeals has held that allegations that the income was used or invested to continue the fraudulent scheme are insufficient to state a claim under Section 1962(a). Id., at 1188-1189; Brittingham v. Mobil Corp., 943 F.2d 297, 304 (3d Cir. 1991). See also Glessner v. Kenny, 952 F.2d 702, 709 (3d Cir. 1991); Rose v. Bartle, 871 F.2d 331, 357-358 (3d Cir. 1989); Allied Erecting and Dismantling v. U.S. Steel, 786 F. Supp. 1223, 1228-29 (W.D. Pa. 1992). Thus, a plaintiff seeking civil damages for a violation of Section 1962(a) must plead facts tending to show that she was injured by the use or investment of racketeering income distinct from an injury caused by the predicate acts themselves. Glessner v. Kenny, 952 F.2d at 708; Banks v. Wolk, 918 F.2d at 421; Leonard v. Shearson Lehman/American Express, Inc., 687 F. Supp. 177, 181 (E.D. Pa 1988); Gilbert v. Prudential-Bache Secs., Inc., 643 F. Supp. 107, 111 (E.D. Pa. 1986); Lawyers Title Ins. Corp. v. Barbone, et al., No. 90-1121, 1990 U.S. Dist. LEXIS 14786, at *3 (E.D. Pa. Oct. 31, 1990). Because plaintiff has failed to allege any facts showing injury from the use or investment of racketeering income and has no standing to assert a claim for damages based on a violation of Section 1962(a), plaintiff's Section 1962(a) claim will be dismissed.

E. RICO Conspiracy—18 U.S.C. § 1962(d)

Plaintiff claims RICO conspiracy pursuant to 18 U.S.C. § 1962(d) alleging that defendants conspired to violate Section 1962(c) and/or Section 1962(a). Defendants argue that this count should be dismissed because plaintiff has not alleged a conspiracy to violate Sections 1962(a) or (c). Plaintiff contends that the conspiracy is "to deny short-term disability benefits to Independence Blue Cross Blue Shield employees" and that direct proof will be provided via discovery.

Under Section 1962(d), "it shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." Any claim under Section 1962(d)

based on a conspiracy to violate the other subsections of Section 1962 necessarily must fail if the substantive claims are themselves deficient. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993) (holding that the actions alleged to constitute violations of subsections 1962(a), (b), and (c) were not violations of those subsections, and thus they also failed to serve as the object of a Section 1962(d) conspiracy). Because plaintiff has not alleged properly a substantive violation of Section 1962(a) or Section 1962(c), she has failed to show how the alleged conspiracy to commit those violations caused her injury. Therefore, plaintiff's Section 1962(d) claim will be dismissed.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANNTOINETTE COOPER                    :                    CIVIL ACTION
                                      :
          v.                          :
                                      :
BROADSPIRE SERVICES, INC, et al.      :                    NO. 04-5289

## ORDER

AND NOW, this 20th day of July 2005, upon consideration of defendants' motion to dismiss, plaintiff's response thereto, and defendants' reply brief, and for the reasons set forth in the accompanying memorandum, it is ORDERED that defendants' motion is GRANTED and plaintiff's complaint is DISMISSED.

_s/Thomas N. O'Neill, Jr.,_
THOMAS N. O'NEILL, JR., J.